# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRENDA DUARTE, | ) |
| Plaintiff, | ) |
| | ) No. 17 C 5061 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| MIDLAND FUNDING, LLC and MIDLAND CREDIT MANAGEMENT, INC., | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff Brenda Duarte sent Defendant Midland Credit Management, Inc. ("MCM") a letter indicating she both disputed and refused to pay a debt that Midland Funding, LLC ("MF") owned and had assigned to MCM to collect. After MCM responded, Duarte filed this lawsuit, claiming MF and MCM violated § 1692c(c) of the Fair Dept Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692c(c), and the Illinois Collection Agency Act ("ICAA"), 225 Ill. Comp. Stat. 425/9(c). The parties filed cross-motions for summary judgment, and MF and MCM also filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 11. Because the Court finds that MCM did not send a communication in connection with the collection of a debt, or, alternatively, that Duarte waived her § 1692c(c) claim by indicating she both disputed the debt and refused to pay, Duarte cannot prevail on her FDCPA claim. The Court also concludes that Duarte has abandoned her ICAA claim and so enters judgment for MF and MCM on her complaint. But because the Court does not find Duarte's claims legally frivolous or filed for an improper purpose, the Court declines to impose sanctions under Rule 11.

# BACKGROUND[1]

Duarte had a credit account with Comenity Capital Bank ("Comenity") for her own personal purposes, on which she defaulted. MF purchased the rights to Duarte's account and assigned the debt to MCM for collection. Duarte learned from Comenity that MF had purchased her account on May 25, 2017. That letter also stated that Duarte should address any future questions, correspondence, and payments to MCM and provided a physical address, website, and phone number for MCM. MF and MCM hold collection agency licenses from the State of Illinois. MF does not send letters to consumers or partake in any collection activities aside from having other entities file collection lawsuits on its behalf. Instead, MF assigns its accounts to MCM for collection and gives MCM discretion in its collection efforts. MCM uses the mail and telephone in its efforts to collect outstanding debts.

After consultation with attorneys from the Community Lawyers Group, Ltd., on June 8, 2017, Duarte sent a letter to MCM.[2] That letter stated:

> Hi,
>
> I was informed that you have this account. I refuse to pay this debt. This account and the amount being reported to my credit report is not accurate.
>
> Sincerely,
>
> Brenda Duarte

---

[1] The facts in this section are derived from the Joint Statement of Undisputed Material Facts. MF and MCM ask the Court to strike Duarte's affidavit because it contradicts her deposition testimony. The Court has considered MF and MCM's objections to the supporting exhibits and included in this background section only those portions of the statements that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment. All facts are taken in the light most favorable to the non-movant in each motion.

[2] Attorneys from the Community Lawyers Group, Ltd. represent Duarte in this case. Duarte also works for the Community Lawyers Group, Ltd.

Doc. 34-7 at 2. Duarte claims she drafted the letter herself and did not copy it from text given to her by counsel. In at least twelve other FDCPA cases, plaintiffs represented by the same counsel have written similar letters to the debt collector. Duarte sent the letter from the fax machine at Community Lawyers Group, Ltd. to a fax number for a division of MCM, the Debt Consolidation Agency. But MCM's Consumer Support Services division, not the Debt Consolidation Agency, handles and responds to consumer correspondence. The fax number Duarte used is not available on MCM's or MF's websites or letters sent to accountholders. But Duarte's counsel had that fax number. Duarte states inconsistently that she found the number on her own or received it from counsel. Although Community Lawyers Group, Ltd. had represented her in lawsuits against other debt collectors at least as of March 4, 2017, her letter to MCM did not mention she had counsel. At the time she sent her letter, MF and MCM had not reported any information about Duarte's account to any credit bureau.

MCM has an FDCPA policy that provides for only specific further communication after MCM receives notification from a consumer requesting that MCM cease communications or refusing to pay the debt. The policy provides that MCM should stop communicating with the consumer regarding the debt but may advise the consumer that (1) "further efforts are being terminated," (2) "[f]uture collections may be made only in writing," and (3) MCM "intends to invoke a specific remedy." Doc. 34-14 at 2. MCM does not otherwise send letters responding to requests that solely request it to cease communication. MCM also updates its account records to reflect account disputes and refusals to pay. The system allows an account to be coded as both.

MCM processed Duarte's June 8 letter as both a refusal to pay and a dispute of the debt. It therefore responded to Duarte on June 28, 2017, in a letter that stated:

>Dear Brenda,

> We have received and processed your dispute. After reviewing the
> information you provided, our account notes, and information
> provided by the previous creditor we have found that our
> information is correct. We have also enclosed documents
> regarding the account. . . .
>
> . . .
>
> In response to your dispute, we have requested that the three major
> credit bureaus change the status of this account to "Disputed".
> Your credit report will not be updated if the federal reporting
> period has expired.
>
> . . .
>
> In the meantime, as requested by you, we will no longer be
> contacting you regarding this account by phone or mail unless it is
> to further respond to this dispute by you.

Doc. 34-8 at 2. On the right side at the top of the letter, MCM provided information about Duarte's account, including the name of the original creditor, the original account number, the MCM account number, the current owner, and the current balance. The second page of the letter had similar information about Duarte's debt and provided contact information for payments and disputes. It also stated at the top of the page: "Please understand this is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose." *Id.* at 3.

Although Duarte believed that the inclusion of the balance in the MCM letter meant MCM sought payment, MCM's representative testified that MCM included the balance for informational purposes. Aside from MCM's June 28, 2017 letter, Duarte did not receive any other letter from MCM either before or after sending her June 8 letter. No one contacted her regarding her debt after the June 28 letter.

# LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The same standard applies when considering cross-motions for summary judgment. *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). Therefore, when considering Duarte's motion for summary judgment, the Court views all evidence in the light most favorable to MF and MCM, and when considering MF and MCM's motion for summary judgment, the Court views all evidence in the light most favorable to Duarte. *Id.*

## ANALYSIS

### I. FDCPA Violation

To establish a claim under the FDCPA, Duarte must prove that (1) MF and MCM qualify as "debt collectors" as defined in § 1692a(6), (2) MF and MCM communicated with her in connection with the collection of her debt, and (3) the actions violated one of the FDCPA's substantive provisions. *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010). In her complaint, Duarte claims that MF and MCM violated § 1692c(c) because MCM sent her the June 28, 2017 letter after Duarte informed MCM of her refusal to pay the debt.[3] Section 1692c(c) provides:

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except—
>
> (1) to advise the consumer that the debt collector's further efforts are being terminated;
>
> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
>
> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

15 U.S.C. § 1692c(c). Although the parties raise a number of arguments as to whether the MCM letter amounts to a violation of § 1692c(c), the Court does not reach all of them because it concludes that Duarte cannot prevail on this claim on at least two grounds.

---

[3] The Court only addresses this § 1692c(c) claim. Duarte has not brought a claim under § 1692e(8), addressing the failure to communicate a disputed debt, or § 1692c(a)(2), addressing communication with the consumer when the consumer is represented by an attorney. Although MF and MCM argue that the parties could have avoided this suit if Duarte's counsel sent the letter or Duarte notified MCM in the letter that she had retained counsel, this fact does not affect the Court's analysis of whether a violation of § 1692c(c) occurred.

### A. Communication in Connection with the Collection of a Debt

First, the Court addresses the parties' dispute as to whether the MCM letter amounts to a communication made in connection with the collection of Duarte's debt. The FDCPA "does not apply to *every* communication between a debt collector and a debtor." *Gburek*, 614 F.3d at 384. But no "bright-line rule" exists "for determining whether a communication from a debt collector was made in connection with the collection of any debt." *Id.* Instead, the Court must engage in a "commonsense inquiry," considering whether the communication includes a demand for payment, the purpose and context of the communication, and the nature of the parties' relationship. *Id.* at 385; *Ruth v. Triumph P'ships*, 577 F.3d 790, 798 (7th Cir. 2009) (holding that the "in connection with" inquiry is an objective one not subject to the unsophisticated consumer standard). But an animating purpose of the communication must be to induce payment. *See Gburek*, 614 F.3d at 385 ("[A] communication made specifically to induce the debtor to settle her debt will be sufficient to trigger the protections of the FDCPA."); *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 914 (8th Cir. 2014) (following the Third, Sixth, and Seventh Circuits and concluding that "for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor").

Here, applying the *Gburek* factors, the Court cannot find that the MCM letter amounted to a communication in connection with the collection of a debt. Admittedly, the parties' relationship was one of debtor and debt collector, but this is not dispositive.[4] *See Ruth*, 577 F.3d at 799. Indeed, MCM had not previously contacted Duarte to collect the debt, and Duarte invited the response by sending MCM her letter. MCM responded in an attempt to comply with the

---

[4] MF and MCM attempt to distract from this relationship by focusing on Duarte's counsel's actions in other cases. Although the Court finds such issues potentially relevant to MF and MCM's motion for sanctions, they do not negate the fact that the relationship between Duarte and MF and MCM was one of debtor and debt collector.

FDCPA's requirements for disputes and refusals to pay. *See* 15 U.S.C. § 1692g(b) (requiring debt collector to provide verification of the disputed debt to the consumer); *Hennessey v. Medicredit, Inc.*, No. 4:18-cv-00217-JAR, 2018 WL 3546769, at *2–3 (E.D. Mo. July 24, 2018) (finding that communication responding to plaintiff's verification request was not made in connection with the collection of a debt).[5] The MCM letter does not include a demand for payment, and nothing suggests that the animating purpose of the letter was to induce payment.[6] *See McCready v. Jacobsen*, No. 06-2443, 2007 WL 1224616, at *1 (7th Cir. Apr. 25, 2007) ("We previously have concluded that a letter informing plaintiffs of the current status of their account and demanding no payment was not a communication 'in connection with the collection of any debt' under the FDCPA."); *Bailey v. Nat'l Sec. Servicing Corp.*, 154 F.3d 384, 388–89 (7th Cir. 1998) (finding that letter informing plaintiffs of the "current status" of their account did not make any demand for payment). Nor does the record indicate MCM actively pursued collection of the debt, either before or after receiving Duarte's letter. *See Klein v. Stellar Recovery, Inc.*, No. 4:16 CV 1480 (JMB), 2017 WL 4551526, at *4 (E.D. Mo. Oct. 12, 2017) (in determining whether communication was made in connection with the collection of a debt, noting that defendant was not "aggressively pursuing collection of this debt" and had only contacted plaintiff one other time more than a year before the challenged contact). The communication provided Duarte with information relevant to her claim of a dispute. *See id.*

---

[5] The Court expresses no opinion as to whether Duarte's dispute letter or MCM's response complied with § 1692g.

[6] In her opening and reply memoranda, Duarte misrepresents the MCM letter, stating that "Midland requested payment from the plaintiff and conveyed information to Plaintiff when Midland told Plaintiff the debt was still being reported on the account," Doc. 31 at 6, and that Midland violated § 1692c(c) by including credit bureau reporting information, Doc. 53 at 8. But the MCM letter did not seek payment and only indicated that MCM would request that the credit bureaus change the report of the account to "disputed" to the extent the account was being reported. Doc. 34-8 at 2. Duarte agreed that Midland and MCM never reported her account to the credit agencies.

(noting that the defendant provided information concerning debt "solely in response to plaintiff's request for specific information" and "did not ask plaintiff to make a payment, suggest a payment plan, or ask whether plaintiff intended to pay the debt"). While the letter included a disclaimer that it was an attempt to collect a debt, the use of this disclaimer "does not automatically trigger the protections of the FDCPA." *Gburek*, 614 F.3d at 386 n.3. And despite the inclusion of this language, the MCM letter stated that MCM would no longer contact Duarte concerning her account, making clear that MCM did not seek to collect on the outstanding debt or induce further payment. Taking all these factors into consideration, the Court concludes that MCM did not send the June 28, 2017, letter in connection with the collection of a debt. This means Duarte cannot prevail on her FDCPA claim.

    **B.**    **Waiver**

Even if the MCM letter amounted to a communication in connection with the collection of a debt, the Court would find that, by including language both disputing the debt and refusing to pay, Duarte waived any claim under § 1692c(c) that a subsequent response from MCM violated the directive to cease communications. Duarte's letter created the potential for an FDCPA violation regardless of whether MCM responded or not. This does not comport with Congress' intention for the FDCPA to "protect consumers from 'improper conduct' and illegitimate collection practices 'without imposing unnecessary restrictions on ethical debt collectors.'" *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1169–70 (9th Cir. 2006). Even a least sophisticated debtor would recognize that a dispute of a debt requires a response and so waives any directive from the debtor to the debt collector to cease communications. *Id.* at 1170–72 (finding that no reasonable trier of fact could find that the plaintiff did not waive the cease communications directive through a request for information).

Under this standard, Duarte's statement that she disputed the debt amounted to a waiver of her statement that she refused to pay the debt, at least with respect to the dispute she raised in the same letter. *See Scheffler v. Gurstel Chargo, P.A.*, 902 F.3d 757, 763 (8th Cir. 2018) (agreeing with *Clark* that "§ 1692c(c) does not prevent a debt collector from responding to a debtor's post-cease letter inquiry regarding a debt"); *Mammen v. Bronson & Migliaccio, LLP*, 715 F. Supp. 2d 1210, 1217 (M.D. Fla. 2009) ("The Court notes that Plaintiff's request for verification of debt is a waiver of the 'cease communication' directive with respect to verification of the debt."). And the MCM letter honored her requests, narrowly responding to the dispute while also indicating that, "as requested by you, [MCM] will no longer be contacting you regarding this account by phone or mail unless it is to further respond to this dispute by you." Doc. 34-8 at 2. MCM made no other contact with Duarte, and the letter itself did not exceed the scope of Duarte's waiver. *Cf. Crumel v. Kross, Lieberman & Stone, Inc.*, No. 5:14-CV-80-BR, 2015 WL 1565432, at *5–6 (E.D.N.C. Apr. 8, 2015) (concluding that the defendant's letter exceeded the scope of the plaintiff's waiver of the cease communication directive because the defendant made a payment demand in connection with the verification letter).[7] Therefore, even if the MCM letter qualified as a communication, Duarte waived her § 1692c(c) claim. The Court grants summary judgment for MF and MCM on Duarte's FDCPA claim.

## II. ICAA Violation

MF and MCM argue that Duarte's ICAA claim fails because no private right of action exists under the ICAA. Although the Illinois Supreme Court has not addressed whether § 9 of

---

[7] Duarte attempts to distinguish *Crumel* by arguing that she never requested verification of her debt, but her dispute of a debt essentially amounts to a verification request. *See* 15 U.S.C. § 1692g(b) (requiring a debt collector to provide the consumer with verification of the debt after receiving a notification that the consumer disputes the debt); *DeKoven v. Plaza Assocs.*, 599 F.3d 578, 582 (7th Cir. 2010) (noting that "dispute" is a term of art in the FDCPA, which "means that the consumer can, without giving a reason, require that the debt collector verify the existence of the debt before making further efforts to collect it").

the ICAA creates a private right of action, the majority of the courts to recently consider the issue have concluded that the Illinois Supreme Court would likely not find a private right of action. *See Eul v. Transworld Sys.*, No. 15 C 7755, 2017 WL 1178537, at *16–19 (N.D. Ill. Mar. 30, 2017) (reviewing decisions on the ICAA and concluding that the Illinois Supreme Court "would most likely . . . find that no implied private right of action exists under § 9 of the ICAA"); *see also Brand v. Caliber Home Loans, Inc.*, No. 16-cv-03432, 2018 WL 4898572, at *7–8 (N.D. Ill. Oct. 9, 2018) (noting the Illinois Supreme Court has not decided the issue but adopting *Eul*'s reasoning to grant summary judgment to defendants on ICAA claims); *Ali v. Portfolio Recovery Assocs., LLC*, No. 15-cv-06178, 2018 WL 4699756, at *5–6 (N.D. Ill. Sept. 30, 2018) (collecting cases). *But see Wood v. Allied Interstate, LLC*, No. 17 C 4921, 2018 WL 2967061, at *4–5 (N.D. Ill. June 13, 2018) (refusing to deviate from the state appellate court's holding in *Sherman v. Field Clinic*, 392 N.E.2d 154, 74 Ill. App. 3d 21, 29 Ill. Dec. 597 (1979), which recognized an implied private right of action under the ICAA). The Court need not decide the issue here because Duarte does not respond to this argument or include any discussion of the ICAA claim in her briefing, effectively abandoning it. *See Palmer v. Marion County*, 327 F.3d 588, 597 (7th Cir. 2003) (deeming claim abandoned where plaintiff failed to discuss it in brief in opposition to summary judgment). Therefore, the Court enters summary judgment for MF and MCM on Duarte's ICAA claim.

### III.  Rule 11 Sanctions

In addition to their summary judgment motion, MF and MCM have filed a motion for sanctions pursuant to Rule 11.[8] Rule 11 sanctions are intended "to deter baseless filings in the district court." *Cooney v. Casady*, 735 F.3d 514, 523 (7th Cir. 2013). The Seventh Circuit has

---

[8] MF and MCM's motion for sanctions does not alternatively seek attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3).

cautioned district courts to impose sanctions sparingly, *Hartmarx Corp. v. Abboud*, 326 F.3d 862, 867 (7th Cir. 2003), with the decision left to the Court's discretion, *Cooney*, 735 F.3d at 523. MF and MCM have a "high burden" to establish that the Court should impose sanctions. *See Lundeen v. Minemyer*, No. 09 C 3820, 2010 WL 5418896, at *3 (N.D. Ill. Dec. 17, 2010).

Specifically, MF and MCM argue that Duarte and her attorneys violated Rule 11(b)(1) and (b)(2). Rule 11(b)(1) requires counsel to determine that the case "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). Rule 11(b)(2) requires counsel to certify that the claims "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or establishing new law." Fed. R. Civ. P. 11(b)(2).

"An attorney takes a frivolous position if he fails to make a reasonable inquiry into facts . . . or takes a position unwarranted by existing law or a good faith argument for its modification." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1122 n.67 (7th Cir. 1992) (citation omitted). Although the Court has found that no reasonable trier of fact could find for Duarte on her FDCPA claim and that Duarte has abandoned her ICAA claim, the Court does not find sanctions under Rule 11(b)(2) appropriate in this case. *See Cartwright v. Cooney*, 788 F. Supp. 2d 744, 755 (N.D. Ill. 2011) ("[E]ven when a court has ruled that a party has been 'wrong on the law,' sanctions against that party do not flow inevitably."). The merits of Duarte's FDCPA claim are not as clear cut as MF and MCM would lead the Court to believe. *See Zelner v. ATG Credit, LLC*, No. 17 C 8007, 2019 WL 556737 (N.D. Ill. Feb. 12, 2019) (in a case involving the same plaintiff's counsel, refusing to impose sanctions after granting summary judgment to the defendant because the Court could not conclude plaintiff's claim was frivolous). Duarte's counsel had a reasonable basis for bringing and continuing to pursue the FDCPA claim, with

12

certain issues surrounding that claim apparently undecided or subject to conflicting interpretations by courts across the country. And, although Duarte appears to acknowledge she has no viable ICAA claim by failing to respond to MF and MCM's arguments on the merits of that claim, as noted above with respect to the ICAA claim, courts in this district have disagreed as to whether the ICAA provides a private right of action.

The Court also does not find sanctions appropriate under Rule 11(b)(1). MF and MCM claim Duarte and her counsel filed this case for an improper purpose and to harass MF and MCM. "Improper purpose means something other than [the] mere assertion of frivolous or unfounded legal arguments or contentions." *Logan v. Serv. Emps. Int'l Union Local 73*, No. 14-CV-10256, 2016 WL 5807932, at *2 (N.D. Ill. Oct. 5, 2016) (alteration in original) (citation omitted) (internal quotation marks omitted). MF and MCM argue that Duarte's counsel engineered this lawsuit by drafting a letter, or having Duarte draft a letter, that placed MCM in an impossible situation, potentially liable for an FDCPA violation regardless of what actions it took in response. The Court is aware of Duarte's counsel filing numerous suits against MF, MCM, and other debt collectors based on various alleged FDCPA violations, including based on responses to letters similar to that Duarte sent. In one similar case, the court sanctioned counsel for, among other things, engaging "in a scheme to force settlements from debt collectors by abusing the FDCPA." *Tejero v. Portfolio Recovery Assocs. LLC*, No. AU-16-CV-767-SS, 2018 WL 1612856, at *4 (W.D. Tex. Apr. 2, 2018). Although the conduct described in *Tejero* provides cause for concern, the Court cannot on this record conclude that Duarte filed her case solely to force a settlement or harass MF and MCM. An animating purpose behind the suit may have been to obtain damages and attorneys' fees, but "it is not improper to file a non-frivolous claim in the hope of getting paid." *Vollmer v. Selden*, 350 F.3d 656, 660 (7th Cir. 2003).

Otherwise, sanctions would be appropriate in every case raising a claim that allows for recovery of attorneys' fees. The Court does not condone the actions of Duarte and her counsel, and it expects counsel to be more judicious in its pursuit of new FDCPA claims in the future. But it does not find sanctions under Rule 11(b)(1) appropriate here. *See Edwards v. Equifax Info. Servs., LLC*, No. 1:17-cv-03096-RLM-MPB, 2018 WL 1748132, at *5 (S.D. Ind. Mar. 13, 2018) (declining to impose sanctions under § 1927 for bad faith litigation but noting that "the Court is not unsympathetic to the challenges BHC's litigation strategy has presented to Experian in fairly and efficiently defending allegations raised against it" and that "[c]ontinued use of these tactics by BHC against Experian may very well result in a different conclusion in the future"), *report and recommendation adopted*, 2018 WL 1745965 (S.D. Ind. Apr. 11, 2018).

## CONCLUSION

For the foregoing reasons, the Court grants MF and MCM's motion for summary judgment [42] and denies Duarte's motion for summary judgment [30]. The Court denies MF and MCM's motion for sanctions [46]. The Court enters judgment for MF and MCM on Duarte's complaint and terminates this case.

Dated: February 27, 2019

                                                          SARA L. ELLIS
                                                          United States District Judge